NITARDY and others, Appellants, vs. THAYER, Respondent.

*March 7—April 9, 1957.*

For the appellants there was a brief by *Dempsey & Robinson* of Whitewater, and oral argument by *Clark Dempsey* and *Robert Robinson*.

For the respondent there was a brief by *Kenney, Korf & Pfeil* of East Troy, and oral argument by *Francis J. Korf*.

MARTIN, C. J. Respondent owned a marsh area in Jefferson county and in 1954 he invited the appellants to join him in building a pond therein to improve duck and goose-hunting conditions. A written agreement was entered into on September 22, 1954, after work had been commenced on the pond, and thereafter appellants expended $2,576.50 on the improvements. The agreement provided that the appellants pay $160 per year for lease of the marsh for hunting, and it further provided:

"This lease is to run indefinitely from year to year unless the party of the first part sells the real estate, in which event the party of the first part will reimburse parties of the second part for the amount of money spent in the creation of the pond, less 20 per cent per year for each year the pond has been in existence, starting in 1954. . . ."

In November, 1954, respondent sold the marsh to one Richard Gumz, who had knowledge of the lease before he purchased the property and was willing to be bound by the terms thereof. Respondent gave appellants no notice of the sale. They learned of it in the spring of 1955 and advised respondent they desired to terminate the lease. Although no one prevented them from hunting there after the sale, they did not hunt the marsh during 1955. Appellants brought this action for reimbursement of their expenditures, claiming the lease was terminated by the sale.

The trial court held that the clause relating to the term of the lease was not a limitation but a condition subsequent and that it was waived by the respondent when he sold the land.

In 52 L. R. A. (N. S.) note, p. 718, it is stated:

"The distinction between a 'condition subsequent' and a 'special limitation' is that, in the former, the words creating the condition do not originally limit the term, but merely permit its termination upon the happening of the contingency, while in the latter the words creating it originally limit the term to the time of the happening of the contingency, hence, when the contingency happens, the estate is terminated as if the term had expired."

In Restatement, 1 Property, p. 59, sec. 24, it is stated:

"The term 'condition subsequent' denotes that part of the language of a conveyance, by virtue of which upon the occurrence of a stated event the conveyor, or his successor in interest, has the power to terminate the interest which has been created subject to the condition subsequent, but which will continue until this power is exercised."

While the trial court made a point of the distinction between the word "unless" used in the clause in question and such words as "until" which specifically connote time, we do not consider the distinction controlling since—

". . . the great weight of authority now is that whatever the form of language used, whether adapted to the creation

of a special limitation or a condition subsequent, the provision will be construed as the latter unless a contrary intent is clearly expressed." 32 Am. Jur., Landlord and Tenant, p. 702, sec. 825.

Since a lessor has an absolute right to sell his reversion subject to a lease without notice to or consent of the lessee (see Anno. L. R. A. 1915C, 192 *et seq.*), the more-reasonable construction of a provision for termination of the leasehold estate in case of sale is that it is enabling and not restrictive of the lessor's legal rights. Anno. L. R. A. 1915C, 236 *et seq.* Such a construction, while in favor of the lessor, in no way impairs the rights of the lessee who has what he contracted for regardless of the sale. In the instant case Gumz knew of the lease and continued it. Appellants have not been prevented from entering upon the land and exercising their hunting privileges. They are deprived of nothing; they have the full benefit of everything for which they contracted. See *Ecke v. Fetzer* (1886), 65 Wis. 55, 26 N. W. 266.

There is some argument that a conflict exists between the clause dealing with termination in case of sale and the clause that the agreement is to be binding upon the respective parties, their heirs and assigns. We see no conflict. Under the "condition subsequent" interpretation of the termination clause, the lessor has his option to terminate and pay the improvements. If he does not exercise that option, his grantee is bound by the lease.

Appellants also argue that there is a contradiction between the two clauses:

"This agreement shall be binding upon the respective parties, their heirs and assigns." and

"It is further herein agreed that the interest of the parties of the second part, and each of them, is not assignable."

which is not resolved by construing the termination clause as a condition subsequent. The argument has little merit. The first of these two clauses refers to all of the terms and conditions of the contract. The second is simply for the protection of the lessees; it is explained by, and must be read in connection with, another clause which provides as follows:

"Hunting rights shall be restricted to the parties to this agreement, except as herein modified. In the event that any one of the parties of the second part shall die or desire to withdraw, the remaining parties of the second part hereby agree to reimburse the party who so withdraws, less 20 per cent of his investment for each year that he has belonged to the hunting group."

In agreeing that their interests were not assignable, each of the lessees protected himself against the assignment of the lease to a stranger.

With respect to appellants' contention that they intended the lease to terminate on sale, Dr. Nitardy testified that the agreement was not in accordance with the preliminary notations he had given the attorney, but that he knew this when he signed the lease; and it was stipulated on the trial that the testimony of Nitardy should stand as the testimony of all the appellants. Under these circumstances we must hold that appellants having had the opportunity to read the contract and knowing that what they were signing did not set forth their previous intentions, the interpretation placed upon it by the trial court is correct. No weight can be given to their argument that they considered it to be a lease that would terminate automatically upon sale of the land. This is not an action for reformation of the contract.

*By the Court.*—Judgment affirmed.